# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

COCHERO L. GOMEZ,

    Plaintiff,

v.                                                                     Case No. 18-CV-1049

ANDREW M. SAUL[1],
COMMISSIONER OF SOCIAL SECURITY

    Defendant.

# DECISION AND ORDER

## PROCEDURAL HISTORY

Plaintiff Cochero Gomez alleges that she has been disabled since October 6, 2010, due to morbid obesity, back pain, knee pain, asthma, thyroid disease, sensitive hands, and anxiety/depression. (Tr. 314.) In May 2014 she applied for disability insurance benefits and supplemental security income. (Tr. 220-32.) After her applications were denied initially (Tr. 95-122) and upon reconsideration (Tr. 123-148), a hearing was held before an administrative law judge (ALJ) on January 18, 2017 (Tr. 40-90). On August 17, 2017, the ALJ issued a written decision concluding Gomez was not disabled. (Tr. 15-29.)

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

The Appeals Council denied Gomez's request for review on May 7, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 7), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a multi-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Gomez "has not engaged in substantial gainful activity since October 6, 2010, the alleged onset date[.]" (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Gomez has the following severe impairments: "obesity, degenerative disc disease, asthma, and left ulnar neuropathy[.]" (Tr. 17.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

2

month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Gomez "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite her impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Gomez has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as the ability to lift and carry twenty pounds occasionally and ten pounds frequently, stand and or walk approximately six hours in an eight hour day and sit approximately six hours in an eight hour day, never climbing ladders, ropes or scaffolds; occasionally climbing ramps or stairs; occasional stooping, kneeling, crawling; occasional handling and fingering on the left; avoid concentrated exposure to environmental irritants such as fumes, dusts, odors, and gases.

(Tr. 21.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

3

20 C.F.R. §§ 404.1526, 416.965. The ALJ concluded that Gomez "is capable of performing [her] past relevant work as a transfer specialist, retail supervisor, and teller." (Tr. 27-28.) As such, the ALJ determined that she is not disabled. (Tr. 28-29.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, whether the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless

4

of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

## ANALYSIS

Gomez argues that the ALJ (1) improperly evaluated her credibility, (2) erred in evaluating and giving weight to the opinions of treating physician Tammy Durant, M.D., and state-agency psychologist Deborah Pape, Ph. D., and (3) failed to take into account her obesity in his RFC determination. (ECF No. 12.)

### I. Symptom Evaluation

In making his RFC determination the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

The ALJ found that Gomez's medically determinable impairments could reasonably be expected to produce back pain that travels down her right leg, left finger numbness, gait abnormality, difficulty sleeping, difficulty leaving the house, and difficulty concentrating. (Tr. 22, 27.) However, the ALJ concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 27.) As a result, the ALJ did not find credible Gomez's testimony that her impairments are work preclusive.

Gomez argues that "[t]he ALJ failed to set forth in a 'meaningful, reviewable way' the specific medical or other evidence he considered to be inconsistent with [her] statements concerning the intensity, persistence and limiting effects of [her] symptoms[.]" (ECF No. 12 at 16.) However, contrary to Gomez's argument, the ALJ discussed specific reasons for concluding that her statements concerning the intensity, persistence, and limiting effects of her symptoms was inconsistent with the evidence in the record. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("Here, the ALJ discussed various inconsistencies between [plaintiff's] alleged symptoms and other evidence. …. The ALJ's credibility determination was not patently wrong, and he provided specific reasons supported by the record, so we will not overturn it.").

For example, Gomez testified that, due to her asthma, "it gets really hard to breathe" when she tries to "walk or if [she] do[es] too much." (Tr. 67.) It's not clear

whether she alleges she can't walk *at all* without having difficulty breathing, nor does she state what constitutes "doing too much" that causes breathing problems. In any event, the ALJ found that "the record shows that [her asthma] is well controlled on medications." (Tr. 22.) He explained:

> [Gomez] denied shortness of breath when seen in December 2011. In March 2012, she was having tooth pain and reported breathing problems. However, lungs were clear to auscultation with no rhonchi or wheezing. She was prescribed Symbicort for her asthma. She reported mild shortness of breath in April 2014. She ha[d] not been using her inhaler. There was no wheezing. Pulmonary effort was normal. She was not in respiratory distress. …. She denied shortness of breath when seen in June 2014 for tooth pain. She had normal pulmonary effort. …. She started on Advair in August 2015 due to difficulty breathing. No wheezing was heard on examination. No wheezing, dyspnea, or shortness of breath was observed in April 2016. On examination, she had good air exchange. Asthma was controlled.

(*Id.*) (Internal citations omitted.) He concluded that "[t]hese physical examination findings and course of conservative treatment support the airway limitations contained in the [RFC]." (*Id.*)

Gomez also testified that she is unable to work due to pain in her back, which radiates down her right leg. (Tr. 58.) She reported that she "[c]annot stand for long periods of time (about 5-10 mins most) [and] [c]annot sit in [the] same position for long (10 mins about)." (Tr. 253.) The ALJ found that "the medical record, including objective medical evidence, course of treatment and medications, does not reflect the type of clinical and laboratory abnormalities to support [Gomez's] allegations of disability[.]" (Tr. 23-24.) He explained, in part, that the medical evidence showed 5/5 strength in the

7

lower extremities, normal gait, negative straight leg raising, normal knee x-rays, normal range of motion, normal cranial nerves, normal musculoskeletal examination, and that Gomez could walk up and down stairs without assistance. (Tr. 24.) As such, he concluded that the medical evidence was "consistent with the [RFC] and inconsistent with the degree of limitation alleged by [Gomez]." (*Id.*)

Gomez also reported the following medication side effects: gabapentin-shaking, sleepy; bupropion-sleepy; metformin-diarrhea, lots of going to bathroom all day, nausea; hydrocodone-tired and sleepy, loss of concentration. (Tr. 260.) However, the ALJ found that "the medical records, such as office treatment notes, do not corroborate those allegations." (Tr. 25; *see* Tr. 567, 589, 617, 638, 669, 677, 696 (reporting no side effects from medication).)

The ALJ also considered Gomez's daily activities in his evaluation of her statements concerning the intensity, persistence, and limiting effects of her symptoms. He concluded that Gomez's "daily activities are fully consistent with the [RFC]," explaining:

> She testified that she shops, visits with her sister and has one friend. She washes dishes and can make a sandwich. She cleans her room. She can drive. She wrote in her August 2014 function report that she reads, can operate a motor vehicle, shop, make bracelets and use a computer. In August 2016, she reported involvement in an online dating relationship for the past seven years. She was engaged. She could email her providers. She had a home exercise program and made gains towards goals. She was making better choices at the grocery store in meal planning. She was walking most days of the week in August 2016.

(Tr. 25)

Gomez argues that the ALJ's "version of her daily activities was incomplete and mischaracterizations of her testimony and other function reports." (ECF No. 12 at 14.) The court agrees that the ALJ's discussion of Gomez's daily activities has its flaws—he simply listed activities reported by Gomez without any accompanying explanation as to how these activities are consistent with the assessed RFC or inconsistent with Gomez's allegations. However, his incomplete treatment of Gomez's daily activities did not render the entirety of his symptom evaluation "patently wrong." *See Regis H. v. Berryhill*, No. 17 CV 6909, 2019 WL 1294667, at *7 (N.D. Ill. March 21, 2019); *Burgos v. Berryhill*, No. 17 CV 6167, 2019 WL 354936, at *8 (N.D. Ill. Jan. 29, 2019). In *Richards v. Berryhill*, the Court of Appeals for the Seventh Circuit upheld an ALJ's symptom evaluation despite the ALJ's "shaky" consideration of the plaintiff's daily activities because the evaluation was otherwise supported by "specific reasons supported by the record." 743 F. App'x at 29; *see also Vanover v. Colvin*, 627 F. App'x 562, 566-67 (7th Cir. 2015) (upholding a symptom evaluation despite the ALJ's failure to "provide a valid explanation for discrediting [the plaintiff] based on the extent of her daily activities" where the other reasons supporting the evaluation were not challenged by the plaintiff); *Kittelson v. Astrue*, 362 F. App'x 553, 557-58 (7th Cir. 2010) (upholding a symptom evaluation despite the ALJ's erroneous analysis of the plaintiff's daily activities because the evaluation rested on an additional, valid reason).

Given the other reasons set forth by the ALJ for concluding that Gomez's statements regarding the intensity, persistence and limiting effects of her symptoms are inconsistent with the other evidence in the record (Tr. 21-25), his incomplete analysis of Gomez's daily activities does not suggest that his evaluation of Gomez's statements concerning the intensity, persistence and limiting effects of her symptoms is unsupported by substantial evidence. *See Burgos*, 2019 WL 354936 at *8 (citing *Richards*, 743 F. App'x at 29-30; *Kittelson*, 362 F. App'x at 557-58; *Vanover*, 627 F. App'x at 566-67).

Even if the ALJ erred in his evaluation of Gomez's statements concerning the intensity, persistence and limiting effects of her symptoms, Gomez does not challenge the ALJ's alternative RFC analysis. The ALJ found that, "even if [he] had made findings consistent with [Gomez's] numerous additional subjective complaints, there are other jobs existing in the national economy that she is able to perform." (Tr. 28.)

> In order to accommodate [Gomez's] subjective complaints, the [ALJ] posed the following alternative [RFC] to the vocational expert: the individual is limited to sedentary work as defined by the regulations with no climbing of ladders, ropes, or scaffolds; occasional postural activities except for no crawling; occasional handling and fingering on the left; avoid concentrated exposure to environmental irritants such as fumes, dust, odors and gases; understanding, remembering, and carrying out no more than simple instructions with no production rate or pace work; simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and with few, if any, workplace changes; occasional contact with the public, coworkers and supervisors; must be allowed a sit/stand option alternatively at will provided the individual is not off task more than 10% of the work day with normal breaks; and will be absent no more than one day per month.

> …
>
> The vocational expert then testified that an individual with [Gomez's] age, education, work experience and the above alternative [RFC] would be able to perform the requirements of representative occupations such as document preparer, …, printed circuit board inspector, …, and surveillance system monitor, …. The vocational expert testified that the jobs could be performed where use of a walker would not interfere with performance of job tasks.
>
> …
>
> Based on the testimony of the vocational expert, the [ALJ] conclude[d] that, considering [Gomez's] age, education, work experience, and the alternative [RFC], [Gomez] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate on this alternative basis.

(Tr. 28-29.) Thus, any error by the ALJ in his evaluation of Gomez's statements concerning the intensity, persistence and limiting effects of her symptoms was harmless. *See Guranovich v. Astrue*, 465 F. App'x 541, 543-44 (7th Cir. 2012.)

## II. Dr. Tammy Durant

On May 13, 2014, Dr. Tammy Durant, Gomez's treating physician, completed a "Medical Examination and Capacity" form. (Tr. 433-37.) She opined that Gomez is able to (1) sit (with normal breaks) during an eight-hour day; (2) stand and walk for one hour (with normal breaks) during an eight-hour day; (3) frequently use her neck, hands, arms, and fingers; (4) rarely twist, stoop, and climb stairs; and (5) never crouch/squat or climb ladders. (Tr. 434-35.) She also opined that Gomez likely would be absent from work three times a month, have difficulty being in an unfamiliar environment, and have difficulty

11

maintaining activities of daily living. (Tr. 435-36.) Dr. Durant considered Gomez's prognosis "fair." (Tr. 433.)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion" *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citations omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

The ALJ gave no weight to Dr. Durant's opinion. (Tr. 26.) He concluded that "[a]t the time of [her] opinion, Dr. Durant only recently started seeing [Gomez] in April 2014

after a long absence. Further, when seen, physical examination findings do not support [her opinion]." (*Id.*) The ALJ explained:

> [Gomez] had 5/5 strength in the lower extremities, normal gait, negative straight leg raising and 2+ patellar Achilles reflexes. She had some tenderness in the knees. Range of motion was intact. Knee x-rays were ordered. She was started on 300 milligrams of gabapentin to titrate up to 900 milligrams a day as well as ibuprofen. She complained of knee and back pain in April 2014. She was using Motrin and some Vicodin for breakthrough pain. She denied any headaches or weakness. She had normal range of motion and no cranial nerve deficit. Knee pain was not reproducible. There was no swelling or erythema. She was given Percocet and Valium. She returned in May 2014. The knee x-rays were normal She had not started physical therapy. In May 2014, she had 5/5 strength in the lower extremities and normal gait.

(*Id.*) (Internal citations omitted.)

Gomez argues that "[t]he ALJ premised the lack of weight given to Dr. Durant's opinions … upon portions of Dr. Durant's examination findings which findings frankly do not relate to [her] severe physical impairments[.]" (ECF No. 12 at 12.) She contends:

> (1) 5/5 strength in the lower extremities (a test for nerve damage – unrelated to [her] sever impairments); (2) normal gait (an indication of nerve function – unrelated to [her] severe impairments); (3) negative straight leg raising (a test for herniated discs – unrelated to [her] severe impairments; (4) 2+ patellar Achilles reflexes (a test for nerve damage – unrelated to [her] severe impairments; (5) and no cranial nerve deficit (a test for neuropathy – unrelated to [her] severe impairments.

(*Id.*) While it may be true that those examinations are not specifically testing for Gomez's severe impairments, the results of those tests are relevant for assessing Gomez's physical limitations. The ALJ concluded, in part, that Dr. Durant's opinion that Gomez would be unable to stand and walk for more than one hour in an eight-hour workday was

13

inconsistent with her examination findings of 5/5 strength in the lower extremities, normal gait, negative straight leg raising, normal range of motion, and normal knee x-rays. Notably, state-agency consultants Syd Foster, D.O., and Mina Khorshidi, M.D., also concluded that Dr. Durant's opinion is "not supported by her own exams, which indicate normal strength and normal gait." (Tr. 102, 116, 130, 143.)

As such, the court finds that the ALJ's evaluation of Dr. Durant's opinion was not "patently wrong."

### III. Dr. Deborah Pape

Dr. Pape, a state-agency psychologist, assessed Gomez's mental RFC. (Tr. 104-06, 118-20.) She opined that Gomez is moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 104-105, 118-19.) She explained in narrative form:

> [Gomez] has some problems with depressive symptoms, including anhedonia and crying symptoms, which may limit her ability to sustain concentration for extended periods.

14

> [Gomez] has depressive symptoms, and socializes with mainly her family only.
>
> [Gomez] would do best with a work setting involving limited changes, to allow her to establish a routine. Aspects of her chronic pain could also impact her daily coping.
>
> [Gomez] has good concentration at exams. She did digit span of 6 forward and 5 in reverse, has good memory, and can do serial 7s well. [She] does have somewhat limited [activities of daily living], though this may be due in part to described physical impairments/pain. [She] has no trouble handling money.

(Tr. 104-06, 118-20.)

The ALJ gave no weight to Dr. Pape's opinion because he found it to be "internally inconsistent." (Tr. 25.) He explained that Dr. Pape "opined for the state agency that [Gomez's] mental impairment was not severe but then opined that [Gomez] would have moderate limitations and also limited [Gomez] to a work setting with limited changes." (*Id.*) As Gomez points out, "[t]he ALJ's finding that Dr. Pape's opinions were internally inconsistent is wrong." (ECF No. 12 at 13.) Contrary to what the ALJ said, Dr. Pape opined that Gomez's mental impairments *are* severe. (Tr. 101, 115.)

Although the ALJ erred in evaluating Dr. Pape's opinion, his error was harmless. The ALJ gave great weight to the opinion of state-agency psychologist Lisa Fitzpatrick (Tr. 25), who opined that Gomez's mental impairments are non-severe (Tr. 128, 141). The ALJ found Dr. Fitzpatrick's opinion to be consistent with the overall evidence in the record, "including function reports detailing daily activities, objective mental status observations and the course of treatment." (*See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th

15

Cir. 2018) (holding that an error is harmless if the court is convinced that the ALJ would reach the same result on remand); *see also* Tr. 25 ("Dr. Pape's opinion is given no weight since it is internally inconsistent *and not supported by the overall body of evidence* as discussed above.") (emphasis added).)

Moreover, the ALJ's alternative RFC accounted for Gomez's alleged mental impairments by limiting her to "understanding, remembering, and carrying out no more than simple instructions with no production rate or pace work; simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions with few, if any, workplace changes; [and] occasional contact with the public, coworkers, and supervisors," which Gomez does not challenge as inconsistent with Dr. Pape's opinion. *See Guranovich*, 465 F. App'x at 543 ("[T]he ALJ went on to apply an alternative RFC, which included limitations on social interaction to accommodate for [plaintiff's] PTSD. Even under this alternative RFC, the ALJ found at step five that [plaintiff] could have worked in a significant number of jobs available in the national economy, and so found him not disabled. Because the ALJ's decision would be the same under this alternative RFC at step five, any error at step four was harmless.").

As a result, the ALJ's error in evaluating Dr. Pape's opinion does not warrant remand.

**IV. Obesity**

Gomez argues that "[t]he ALJ failed to take into account [her] obesity[.]" (ECF No. 12 at 18.)

The ALJ found Gomez's obesity to be a severe impairment (Tr. 17), and he discussed it in his RFC explanation (Tr. 23). He stated:

> Next, examining [Gomez's] obesity, [she] did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in [Gomez's] favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. Her BMI was 55.7 in October 2010. Weight loss was recommended by Dr. Durant in April 2014. It was 58 in November 2014. Health Diet and exercise was recommended in March 2015. [Dr. Buelow] wrote in March 2016 that she was treating [Gomez] and that her BMI was 54. In addition to morbid obesity, [Gomez] also had sleep apnea, hypertension, lumbar radiculopathy, hyperlipidemia, diabetes, exertional dyspnea and urinary incontinence. They limited her weight loss due to lack of ability to exercise. Bariatric surgery was recommended. Dr. Durant met with [Gomez] in April 2016. [Gomez] reported losing fifty pounds. She was referred to the bariatric clinic on April 12, 2016 with a BMI of 53.11. She complained of chronic right hip and back pain. …. She was set up for a Roux-En-Y bypass surgery. She continued to follow up with the clinic …. In October 2016, no ambulation limits due to weight were noted. On November 14, 2016, gastric bypass surgery was performed. She was discharged the next day and ambulated without difficulty. In a two-week follow up appointment, she had lost 42 pounds. She denied any fatigue, numbness, weakness or tingling. By November 30, 2016, she was denying back or joint pain. She also denied depression and anxiety. She has normal motor and sensory function. Incisions were healed by December 2016. She had normal sensory and motor function. She only had nausea/vomiting if she ate too fast or too much. The surgery and follow up at the bariatric clinic has been helpful in addressing her obesity.

(Tr. 23.) (Internal citations omitted.)

It is true that the ALJ did not specifically explain how obesity factored into the RFC. Nevertheless, Gomez does not say what additional limitations he should have added based on her obesity. *See Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) ("Here the ALJ did not explicitly discuss the exacerbating effects of [plaintiff's] obesity on her other limitations when arriving at her RFC, but the error was harmless. [Plaintiff] did not articulate how her obesity exacerbated her underlying conditions and further limited her functioning—as it was her burden to do.") (internal citation omitted).

In addition, as the Commissioner points out, the ALJ gave great weight to the opinion of Dr. Khorshidi (Tr. 25-26), who considered Gomez's obesity and found that Gomez could still do light exertional work (Tr. 130-32 143-45). *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [plaintiff's] obesity. Thus, although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctor's opinions.").

As such, the ALJ did not err by failing to account for Gomez's obesity in the RFC.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed** and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of June, 2019.

*[signature: William E. Duffin]*
WILLIAM E. DUFFIN
U.S. Magistrate Judge